Ford, d/b/a Mississippi Motor Co. *v.* Commercial Securities Co., Inc.

Nos. 39595, 39800 April 4, 1955 79 So. 2d 253

May 16, 1955 80 So. 2d 12

738

*John W. Prewitt,* Vicksburg; *Satterfield, Shell, Williams & Buford; K. Hayes Callicutt,* Jackson, for appellant.

*Young & Daniel,* Jackson; *Teller & Biedenharn,* Vicksburg, for appellee.

ETHRIDGE, J.

These two consolidated cases involve the question of whether the trial court was correct in sustaining appellee's motions to strike and its demurrers to appellant's petitions for leave to file a bill of review. For reasons subsequently stated, we think that this action was erroneous.

In August 1952, appellee, Commercial Securities Company, Inc., filed a bill of complaint in the Chancery Court of Warren County against appellant, Jack E. Ford, seeking to recover from him the balance due on twenty-eight conditional sale contracts which were assigned to appellee with recourse by Mississippi Motor Company. The bill charged that Ford was a partner in the business known as Mississippi Motor Company, along with E. G. Clarke. Clarke was shot and killed by his wife on June 20, 1952. A preliminary hearing was had concerning the killing, but she was not indicted for any crime. Clarke appears to have been the managing partner in Mississippi Motor Company, and Ford the one who financed and generally supervised it.

Trial was held in January 1953, and the final decree of the chancery court, dated January 21, 1953, adjudicated that Ford was liable along with Clarke on the conditional sale contracts, and gave a decree for Commercial Securities against Ford for $17,747.37, the balance due on the twenty-eight conditional sale contracts, and certain wholesale financing obligations. On appeal, that

decree was affirmed as modified in Ford v. Commercial Securities Co., Inc., 70 So. 2d 525 (Miss. 1954), motion to correct judgment sustained in part, 72 So. 2d 201. This Court held that Ford and Clarke were partners in Mississippi Motor Company, and that Ford was liable on the conditional sale contracts.

Also considered by this Court in that opinion was a "Petition for Bill of Review," which Ford had filed about two and one-half months after the final decree of January 21, 1953. That petition charged that Ford had obtained certain newly discovered evidence which would show that the findings of balances due on the conditional sale contracts were incorrect, and that Commercial Securities had wrongfully and fraudulently withheld from the trial court certain facts concerning the balances due, which warranted the reopening of the original decree. The chancery court sustained a motion to dismiss that first petition for bill of review. That action was also affirmed by this Court in its opinion in 70 So. 2d 525, 528. After that affirmance of February 1954, and on April 15, 1954, Ford filed a second petition, designated as petition for leave to file bill of review, to which there was attached a copy of a bill of review and the affidavits of sixteen witnesses, including those of Ford and John Prewitt, his attorney. The two latter affidavits dealt with both the balances due on the conditional sale contracts and the diligence of affiants in obtaining the facts. On April 23, 1954, appellee's motion to strike this second petition was sustained, and that action is now before us in cause No. 39,595. On January 20, 1955, Ford filed a third petition for leave to file bill of review, to which was attached a copy of a bill of review, and the affidavits of thirty-three persons, including Ford and Prewitt. On January 29, 1955, the trial court sustained appellee's motion to strike this petition, and its general and special demurrers to it. That action is now before us in cause No. 39,800, which has been consolidated with No. 39065.

 The question is whether the trial court should have permitted Ford to file his bill of review in the light of the facts alleged and well pleaded in the petition therefor. For the purposes of this decision, on the motions and demurrers, the facts which are well pleaded in a petition for leave to file a petition for bill of review must be taken as true. Eden Drainage District of Yazoo County v. Swaim, 213 Miss. 386, 54 So. 2d 547, suggestion of error overruled in 55 So. 2d 439 (1951); 41 Am. Jur., Pleading, Section 353; Griffith, Mississippi Chancery Practice, Sections 640, 286, 288.

 It will serve no purpose at this time to undertake to set out in detail the charges made in Ford's petitions for leave to file a bill of review, and the contents of the affidavits. We have considered them carefully and fully, and have concluded that the chancery court should have permitted him to file a petition for bill of review. In substance, the second and third petitions allege that, prior to the entry of the original decree in January 1953, neither appellant nor his attorney had reason to believe or any knowledge of the fact that appellee's claims as to the balances due on the twenty-eight conditional sale contracts, and the wholesale financing contracts, were false and fraudulent. Both of them had diligently attempted to find the true facts after the untimely death of Clarke, who managed the business of Mississippi Motor Company and kept its records. The original decree was obtained by the false and fraudulent representations of appellee, which fraud was known to appellant and his attorney only after the entry of the final decree, when the records of E. G. Clarke, deceased, were found in a large paper sack behind some clothes in a closet of decedent's home.

Appellee's original bill of complaint had charged that all or practically all of the twenty-eight automobiles covered by the contracts in question had been returned to Mississippi Motor Company, when in fact eleven of them were never repossessed by appellee, and more than four-

teen were repossessed by appellee after Clarke's death, never accounted for by appellee, and never delivered either to Clarke or Ford. Appellee fraudulently concealed from the court the fact that after Clarke's death it had repossessed these cars, and either disposed of them or abandoned them, and did not account for them. Appellee fraudulently concealed and withheld from the court numerous credits for payments in part or in toto on several of the automobiles.

The petition further charged that appellee fraudulently obtained from appellant an agreement, which was inserted in the final decree of January 21, 1953, that Ford owed appellee the sum of $3,833.13 on certain cars which were floor-planned under a wholesale contract; that in fact on two of these cars Ford had found in the records of Clarke, discovered after the final decree, receipts issued by appellee for payments in full of two of the cars which were floor-planned; that although Bradshaw, an agent of appellee, testified that five of the automobiles were sold for a little more than $1,200, they were actually sold for $1,400, and that the reasonable value of the five automobiles so sold a few weeks before the sale was $3,800 rather than $1,400. Attached to the third petition for leave to file a bill of review were thirty-three affidavits by numerous persons, some of whom stated that particular identified automobiles, which were covered by the twenty-eight conditional sale contracts originally sued on, either had not been repossessed by appellee, or had been repossessed, sold and not accounted for, or had been abandoned by appellee.

The brief outline of the charges and the substance of the affidavits in the petitions involved in both of the cases now under consideration, which for purposes of those petitions were admitted in the hearings on motions to strike and demurrers, presented adequate, detailed and documented charges of alleged fraud by appellee in procuring the decree, and of the failure of appellee to comply with its obligations to Ford as a guaran-

tor and assignor of the conditional sale contracts. They also satisfied the requirement of due diligence by appellant. At least we cannot say he was inexcusably negligent in preparing his case prior to the decree of January 1953. These charges require an answer and a hearing on their merits.

■■ Appellant argues, with reference to appellee's duties, that appellee had a recourse agreement with Clarke to the effect that if any vehicle sold under the conditional sale agreements were not returned to the Mississippi Motor Company by appellee within thirty days after default of payment, Mississippi Motor Company would not be responsible for the unpaid balance. We do not think that, on remand, the chancery court can consider this contention of appellant. Appellant offered testimony on this issue in the original trial in January 1953, and the chancery court sustained appellee's objection, and excluded any evidence as to an alleged thirty-day recourse agreement. Appellant did not there perfect the record to show its evidence on that issue, and in the opinion in 70 So. 2d 525, this Court held that Ford's letter of guaranty of October 6, 1951, was the contract determining his obligations. Hence appellant is precluded from now litigating again his contention concerning a thirty-day recourse agreement.

■■ The duties and rights of Commercial Securities are well set forth in the recent case of Dearborn Motors Credit Corporation v. Hinton, 74 So. 2d 739 (Miss. 1954). The conditional vendor owes a duty to the conditional vendee to deal justly with his equitable rights, and the assignee of the conditional vendor, who has guaranteed to the assignee payment of the indebtedness in the event of default by vendee, owes a correlative duty to its assignor and guarantor to deal justly with his equitable rights and to use reasonable diligence to obtain the best price available for the property, where a sale is made of it.

██ █ Appellee argues that the Court's decision in 70 So. 2d 525, 528, affirming the decree of January 1953, and the action of the chancery court in striking the first petition for a bill of review are res judicata upon the issues raised in the petitions now before us. However, our decision in 1954 affirmed the striking of the first petition on procedural grounds. That opinion specifically pointed out that the first bill was properly stricken, since Ford did not file a petition for leave to file a petition for bill of review, and the first petition did not have attached to it the affidavits of any witnesses in support of the general charges therein, and did not contain detailed affidavits of Ford and his attorney concerning lack of knowledge and exercise of diligence by them. The finding in that opinion, that the trial court did not abuse its discretion in holding that appellant had not exercised due diligence, had reference to the lack of affidavits to support the general allegations of due diligence. The striking of the first petition was affirmed by us on procedural grounds and not on the merits. It met none of the requisite procedural requirements. Griffith, Mississippi Chancery Practice, Sections 635-641.

We therefore hold that appellant should be, and he is, granted leave to file a petition for bill of review, and to submit to the trial court his evidence thereon. However, appellant is bound by the finding in the final decree and the judgment of this Court that he was a partner with Clarke in Mississippi Motor Company, and is liable for the unpaid balances on the conditional sale contracts. Correlatively, the inquiry on remand should be directed to ascertaining the amount of the unpaid balances, and whether appellee has complied with its duties to its guarantor and assignor, Ford. The inquiry would extend both to the conditional sale contracts and to the floor-planning or wholesale financing contracts. Although the parties agreed as to the amount due on wholesale financing, and it was entered in the final decree, the petitions here involved, as recited above, adequately charged

fraud and concealment of the facts with reference to that amount, the sale of the five cars at a sum considerably less than their value, and the later finding by appellant of two receipts for payment by Mississippi Motor Company of the balances due on two of the cars.

The decision of this Court in 70 So. 2d 525, 528, ordered a remittitur of $1,202.83 in the judgment affirmed for appellee, for the reason that appellee's proof concerning the amount of the deficiency, after giving appellant credit for the sum realized from sale of the two cars in question, was insufficient. Since appellant is now being permitted to file a petition for bill of review, reopening issues as to the amounts, if any, owed by him on the conditional sale contracts, we think that in equity and fairness appellee should be permitted, if it so desires, to make proper proof on this item at the hearing of the petition.

For the foregoing reasons, these two consolidated cases are reversed and remanded for further proceedings consistent with this opinion.

Reversed and remanded.

*McGehee, C. J.,* and *Lee, Holmes* and *Arrington, JJ.,* concur.

### ON SUGGESTION OF ERROR

LEE, J.

■■ ■ The Court held, in the original opinion, that the facts which were well pleaded in the petitions for leave to file a petition for a bill of review, must be taken as true; that the petitions contained sufficient facts, if true, to withstand the demurrers and motions to strike; that the trial court was in error in sustaining the appellee's demurrers and motions to strike; and that leave to file should have been granted, and answer thereto required.

The Court, after thorough consideration of the appellee's suggestion of error, adheres to its original views. The Court did not, and does not, hold that the appellee is cut off from any defenses which it may legally or appropriately assert in the court below.

The suggestion of error is therefore overruled.

*McGehee, C. J.,* and *Holmes, Arrington,* and *Ethridge, JJ.,* concur.